## BOARD OF EDUCATION OF GRANITE SCHOOL DIST. et al. v. SOUTHERN SURETY CO. et al.

No. 4895. Decided April 24, 1930. (287 P. 332.)

*H. D. Moyle* and *Stewart, Alexander & Budge,* all of Salt Lake City, for appellant.

*Young & Moyle* and *Harry W. Rudine,* all of Salt Lake City, for respondents.

ELIAS HANSEN, J.

This is an action to recover a judgment for building material used in the construction of a school building situated in the Granite school district, Salt Lake county, Utah. The board of education of Granite school district entered into a contract with George H. Adamson whereby Adamson agreed to construct a school building to be known as the Woodrow Wilson School, for the contract price of $44,700. The Southern Surety Company gave a bond to the board of education conditioned that Adamson would faithfully perform his contract and pay all claims for labor and material furnished in the construction of the school building. George H. Adamson purchased building material used in the con-

struction of the school building from Frank M. Allen Company but did not pay for the same. Upon issues joined, a trial was had before the court sitting without a jury. The trial resulted in a judgment in favor of plaintiffs and against the defendants. The Southern Surety Company alone prosecutes this appeal.

The judgment thus rendered is assailed upon the following grounds: (1) That notice to creditors was not given as provided by Comp. Laws Utah 1917, § 3753; (2) that plaintiffs' claim is barred because not brought within time; (3) that the evidence does not support the findings of fact, conclusions of law, and judgment; and (4) that the plaintiffs are not entitled to a judgment for any interest on the money owing for building materials prior to the date that the judgment was rendered in the court below.

Plaintiffs claim the benefits provided for by Comp. Laws Utah 1917, title 62, c. 2, § 3753. The act, so far as material to a determination of the questions here presented for review, provides that a bond must be exacted from any person, firm, or corporation having a contract for the construction of any public building; that the bond must provide for the faithful performance of the contract, with additional obligation that the contractor shall promptly make payments to all persons supplying labor and material used in the prosecution of the work provided for in the contract; that, if no action is brought by the obligee within six months from the completion and final settlement of the contract, then any person who has not been paid for material or labor furnished in the construction of the building may bring an action in the name of the obligee against the contractor and his surety for the recovery of the amount owing for such labor or material. The act further provides:

"That where suit is instituted by any such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, or abandonment thereof, but shall be commenced within one year after the performance and final settlement or abandonment of said contract, and not later; and, provided further, that where suit is so instituted by

a creditor or creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within the time hereinafter provided, and not later. * * * In all suits instituted under the provisions of this chapter, such personal notice of the pendency of such suits, informing them of their right to intervene, as the court may order, shall be given to all known creditors, and, in the addition thereto, notice by publication in some newspaper of general circulation published in the county where the contract is being performed for at least three successive weeks, the last publication to be at least two months before the time limited therefor; and all claimants and creditors who do not intervene within the time herein provided shall be forever barred from recovery upon said bond." (§ 3753.)

On April 5, 1927, personal service of summons was had on each defendant. The complaint was filed in the district court of Salt Lake county on April 9, 1927. On April 12, 1927, an order was made and entered in the cause directing that notice of the pendency of the action and of the right of all unpaid creditors who have furnished materials and labor in the construction of the Woodrow Wilson School building to intervene in the action. The order further directed that a copy of the notice be served upon all known creditors of George H. Adamson who had furnished labor or materials in the construction of the Woodrow Wilson School building and that a copy thereof be published in the Citizen, a newspaper of general circulation in Salt Lake county, Utah, one a week for three successive weeks. Pursuant to such order notice was served and published as directed. The notice was published in the Citizen on April 23, April 30, and May 7, 1927.

The appellant contends that the publication of the notice in the Citizen for three successive issues does not meet the requirements of Comp. Laws Utah 1917, title 62, c. 2, in that the publication was not for the full period of three weeks. In the case of *Savings & Loan Society* v. *Thompson*, 32 Cal. 347, a similar question was presented and a result reached contrary to the contention here made by the appellant. Even if it should be conceded that

the appellant is right in its contention that the notice was not published for the full period of time contemplated by the statute, it could not now be heard to complain on that account. The giving of the notice is not jurisdictional. The court had jurisdiction of the subject-matter and of the parties served with process independent of the notice. No claim is made that there are any claims for material furnished in the construction of the school building other than that of Frank M. Allen Company. If there are any such claims they are, and at the time of the trial of this cause in the court below were, forever barred from enforcing such claims against the appellant, and therefore it can in no way be prejudiced because the notice was not published for a longer period of time. Such view is supported by the following cases: *Vermont Marble Co.* v. *National Surety Co.* (C. C. A.) 213 F. 429, 433; *A. Bryant Co.* v. *N. Y. Steam Fitting Co.*, 235 U. S. 327, 35 S. Ct. 108, 112, 59 L. Ed. 253. In the case of *Vermont Marble Co.* v. *National Surety Co.*, supra, it is said:

"No matter how many creditors have failed to avail themselves of their right to sue within the period named, the liability of the surety on the bond cannot be enforced as to them after the expiration of this one year period. Plainly, then, the interest of these defendants was not to bring in other creditors, but, on the contrary, it was their interest to have the year expire without their having intervened. Yet, under the contention of defendants, that this provision for notice and publication is mandatory and jurisdictional and not simply directory the anomalous result is reached, that the admittedly meritorious claim of this intervening creditor, asserted within the period prescribed by law and in a suit instituted within that period, must be defeated at the suggestion of the defendants, because a publication has not been made within the time limited therefor, the only object of such publication being to bring in other creditors who had not as yet intervened and whose demands presumably would not otherwise be asserted within the period limited therefor. Whatever may have been the intent of the Legislature as to this provision, it clearly was not to bring about a result so contradictory of the purpose of the act."

In the case of *A. Bryant Co.* v. *N. Y. Steam Fitting Co.*, supra, it is said:

"In other words, it is in effect contended that a provision which it is to the interest of the Surety Company not to have observed the the statute gave it a right to have observed. Such a contradiction of interests and rights we cannot assume the statute intended to create, nor that it was intended to give to the Surety Company a right to have done that which it is its interest not to have performed. The provision for notice, therefore, is not of the essence of jurisdiction over the case, nor a condition of the liability of the Surety Company. We need not go further in this case."

It is next urged that the claim here sued upon is barred because not brought within one year after the construction of the Woodrow Wilson School building was completed. Upon this phase of the case the evidence shows that the contract between the board of education and George H. Adamson designates Miller & Treganza as architects, superintendent, and agent of the board of education; that the school building must be constructed to the satisfaction and under the direction of Miller & Treganza; that payments are to be made to Adamson from time to time as the work progresses on certificates issued by the architects; that the board of education is under no obligation or liability to make any payments under the contract until the contractor furnishes receipted bills showing that all materials and labor used in the construction of the building have been paid; that, in case of dispute between the board of education and the contractor "relating to the contract, the work to be or that has been performed under it, or in relation to the plans, drawings and specifications hereto annexed, the decision of said architects shall be final and binding on both parties hereto," and that "no certificate given or payment made under the contract, except final certificate or final payment, shall be conclusive evidence of the performance of this contract either wholly or in part against any claim of the owner, and no payment shall be construed to be an acceptance of any defective work."

The bond given by the Southern Surety Company to the board of education contains these provisions:

"Now, therefore, The condition of this obligation is such that if the Principal shall faithfully perform the contract on his part, and shall satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the Owner from all cost and damage which it may suffer by reason of his failure so to do, and shall fully reimburse and repay the Owner all outlay and expenses which the Owner may incur in making good any default and shall promptly pay all persons who have contracts with the Principal, for or who supply labor and materials used in carrying out the work provided for in the contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

"Provided, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this bond after one year from the day on which the final payment under the contract is paid."

On November 12, 1925, the architects issued a final certificate to George H. Adamson. At that time the construction of the Woodrow Wilson School building was complete. On November 23, 1925, the board of education paid the amount of the final certificate, less $248.66, which was withheld until it could be determined whether or not some waterproofing constructed by the contractor was satisfactory. Later is was discovered that the first final certificate issued to Mr. Adamson did not include some hardware which Mr. Adamson had put into the building. On July 17, 1926, the architects issued another or amended final certificate to replace the final certificate issued on November 12, 1925. The new certificate, however, was dated November 12, 1925. It gave Mr. Adamson an additional credit of $630.91. On July 19, 1926, the board of education gave to Mr. Adamson a check in final payment of his contract. The appellant contends that the one-year period in which an action against it may be brought began to run on November 12, 1925, when the first final certificate was issued. The respondents contend that the statute did not begin to run until the amended final certificate was issued and the final payment made. Thus, if the appellant is right in its contention, this action was not begun within time. But, if the respondents are to be upheld in their contention, this action was begun within the year.

The bond which the appellant executed expressly fixes the final payment as the event which starts the one-year statute of limitation to run. There is no law which precludes the surety company from extending the time within which an action may be begun on its undertaking, and, having done so, it cannot be heard to shift its position in order to escape a liability which it assumed. *Union Sheet Metal Works* v. *Dodge,* 129 Cal. 390, 62 P. 41; *Williams* v. *Markland,* 15 Ind. App. 669, 44 N. E. 562; *Blythe-Fargo Co.* v. *Free,* 46 Utah 233, 148 P. 427; *Paxton* v. *Spencer* (Utah) 265 P. 751; *Gottsegan Cigar Co.* v. *Levy,* 42 Utah 366, 130 P. 780, Ann. Cas. 1916A, 1189; *Walker Co.* v. *American Surety Co.,* 60 Utah 435, 211 P. 998.

Moreover, the language of section 3753 is not susceptible of the construction contended for by the appellant. The act provides that an action may be begun by one who furnishes material or labor in the construction of a public building within one year after the complete performance of the contract and final settlement thereof. Thus the statute does not begin to run until the building is complete and there is a final settlement of the amount owing on the contract. The final certificate issued by the architects on November 12, 1925, was inaccurate, and was later corrected. A contract cannot be said to be finally settled so long as there is a dispute as to the amount still owing on the contract. The final certificate issued by the architects on November 12, 1925, did not finally settle the amount owing to Adamson, but on the contrary, the architects discovered that the first final certificate was in error, and, under date of July 17, 1926, issued a new final certificate which was taken by the board of education as the basis for making final payment. An erroneous final certificate which is later changed because of an error cannot be said to constitute a final settlement. The appellant must fail in its contention that the claim here sued upon is barred by the statute of limitations.

It is next urged that the evidence does not support the judgment. It is made to appear that on May 20, 1925, the Frank M. Allen Company and George H. Adamson entered into a written contract whereby the Frank M. Allen Company agreed to furnish certain specified materials for the construction of the Woodrow Wilson School building. The contract price was $3,586. All of the materials were delivered at the school biulding. Some of the materials were not used in the construction of the building, but were returned to the Frank M. Allen Company. There is some conflict in the evidence as to the amount and value of the materials returned. The trial court apparently believed the testimony of plaintiffs' witnesses as to the value of the materials returned, and gave Adamson credit for the same. The evidence justifies such a conclusion. It further appears that George H. Adamson had a general account with the Frank M. Allen Company; that, at about the time Mr. Adamson purchased materials for the construction of the Woodrow Wilson School building, he also purchased materials for the construction of various other buildings. The materials so purchased by Mr. Adamson were charged to his general account. The bookkeeper of the Frank M. Allen Company testified that she made a notation on the books of the company showing the particular buildings in which the materials were to be used. The account which was received in evidence shows such notations. The bookkeeper further testified that, when Mr. Adamson made any payment on his account, she credited such payment on the oldest account, except when Mr. Adamson indicated the account to which the payment should be applied, and that, when he indicated the account to which the payment should be applied, it was so applied. Appellant claims that Mr. Adamson paid to the Frank M. Allen Company some of the money which he received from his contract for the construction of the Woodrow Wilson School building which was not credited to the payment of materials which went into the construction of that building. Upon

this record appellant's claim in such respect may or may not be true. The evidence would not justify a conclusion either way. One who relies upon payment to defeat a cause of action must, to succeed, establish such fact by a preponderance of the evidence. The appellant has no lien upon the money which the board of education paid to Mr. Adamson. So far as appears, Mr. Adamson was at liberty to use the money which he received for the construction of the Woodrow Wilson School building as he saw fit. Appellant cannot escape liability because the money received from the contract was used by Mr. Adamson to pay obligations other than those growing out of his contract to construct the Woodrow Wilson School building.

Complaint is also made of that part of the judgment awarding to plaintiffs interest up to the date of judgment in the sum of $736.65. The trial court found that the principal sum remaining unpaid by Mr. Adamson for materials furnished by the Frank M. Allen Company was ■ $3,086. The judgment is dated December 31, 1928. The written contract between George H. Adamson and the Frank M. Allen Company is silent as to when Mr. Adamson should pay for the materials furnished for the construction of the school building. It is clear from the record that the materials were all furnished before November 12, 1925. Thus more than three years elapsed between the time the materials were furnished and the date of the judgment. The amount of interest allowed by the judgment is slightly less than the legal rate of 8 per cent for a period of three years. There is no evidence in the record tending to show that Mr. Adamson should have any time after the materials were delivered in which to pay for the same. The evidence supports the judgment both as to principal and interest.

The judgment is affirmed. Respondents are awarded their costs.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.